NOT FOR PUBLICATION                                    (Doc. No. 9)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                     :

ORLANDO RODRIDGUEZ,         :
                                       :

            Plaintiff,       :     Civil No. 13-4634 (RBK/JS)
                                       :

            v.              :     **OPINION**
                                       :

READY PAC PRODUCE, OSCAR    :
RODRIGUERA, and CHRISTINA    :
CROWLEY,                     :
            Defendants.    :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court on a motion by Ready Pac Produce, Oscar

Rodriguera, and Christina Crowley ("Defendants") to dismiss the complaint of Orlando

Rodriguez ("Plaintiff") for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6).  The Complaint was filed pro se by Plaintiff, and asserts a number of claims based

upon the circumstances of the termination of his employment with Ready Pac Produce.  For the

reasons expressed below, Defendants' motion will be **GRANTED**.

**I.**        **BACKGROUND**

      This action arises out of the termination an employment relationship between Plaintiff

and Ready Pac Produce.  Plaintiff was hired by Ready Pac in February 2013 as a Production

Supervisor.  Compl. ¶ 8.  Ready Pac gave him a written "Offer of Employment," which provided

for compensation in the amount of $2,692.31 bi-weekly, which is the equivalent of $70,000 on

an annual basis, and provided that the employment relationship was to be at-will.  Compl. Ex. 1.

At some point after he started work, Plaintiff indicates that he presented a complaint to Shawn Bray, who was Ready Pac's former Plant Director, and to Christina Crowley, the Human Resources Manager, in which he alleges that he "requested that immediately, the organization start[] and provide[] a program where people in leadership / administrative roles will be trained to understand, follow and comply with the legal requirements of Title VII of the Civil Rights Acts of 1964." Compl. ¶ 10.  He also complained to management about what he believed to be a violation of the Equal Pay Act of 1963.  Id. ¶ 12.

Plaintiff alleges that in June or July 2013,[1] Crowley and Oscar Rodriguera, who was the Acting Plant Manager at the time, met with him and accused him of "[a]dultery, having several girlfriends and talking in public of [his] personal affairs," all allegations that he denies.  Id. ¶ 16. He alleges that these accusations were incorporated into his personnel file.  Id. ¶ 17.  He apparently had a subsequent meeting with Rodriguera and a different human resources employee, at which he alleges he was read a "list of faults," some of which he indicates were related to job performance, and others to "human relations."  Id. ¶ 19.  Plaintiff does not identify the accusations leveled against him at the second meeting with management, although he characterizes them as "totally false."  Id.

After these two meetings, Plaintiff was terminated, although it does not appear that Plaintiff provides the exact date of his termination.  Id. ¶ 20.[2]  He alleges that his supervisors justified the termination through the information conveyed to Plaintiff at the two meetings.  Id. He also indicates that one of the reasons given by his employer for his termination was that he

---

[1] The Complaint alternatively places the date of the meeting with Rodriguera and Crowley on or around July 11, 2013, and on or around the third week of June 2013.  Compl. ¶¶ 15, 16.
[2] Defendants' brief states that Plaintiff was terminated on July 11, 2013.  Def. Mot. Dismiss at 3.

missed two days of work due to reporting as ill, which he attributes to working long hours in a cool wet environment at Ready Pac.  Id. ¶ 21.

Plaintiff subsequently filed suit against Ready Pac, Rodriguera, and Crowley.  He sets forth ten substantive counts,[3] which allege causes of action for wrongful termination, unjust enrichment, money owed not paid, termination contrary to public policy, breach of the implied covenant of good faith and fair dealing, violations of and retaliation related to Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation based on the Equal Pay Act of 1963, emotional distress, mental anguish, and public humiliation.

Plaintiff has attached as exhibits to his complaint a number of email communications between himself and other Ready Pac employees.  The majority of the email communications reflect complaints lodged by Plaintiff with managers and human resources personnel.  The first is an email sent on May 6, 2013 to five individuals at Ready Pac, including Bray and Crowley.  Id. Ex. 2.  In it, Plaintiff complains about the conduct of a supervisor named Ford Francis.  Id.  He claims that Francis pointed at a number of individuals, including Plaintiff, and stated that "the company should fire all of you."  Id.  Plaintiff suggests that the comment was inappropriate and racially motivated because the "all of you" he was referring to were all evidently racial minorities, while Francis is white. Id.

Two other emails relate to a request by Plaintiff to transfer to a daytime shift, instead of the night shift that he was evidently working at the time.  Id. Ex. 4.  In another email five pages in length, Plaintiff protested to Crowley about Ready Pac's policy of not paying him for a day in which he was out sick.  Id. Ex. 5.  Other emails relate to more routine production and efficiency

---

[3] Plaintiff also includes two other counts in his Complaint, which are entitled "Open Claim 1" and "Open Claim 2."

issues at the plant, and one involves Plaintiff reporting an absence from work due to illness.  Id. Ex. 6.[4]

Defendants have now moved to dismiss the entire complaint, and also seek, in the alternative, the dismissal of all claims against Crowley and Rodriguera in their individual capacities.  Although Plaintiff evidently did not receive prompt notice of Defendants' motion, he eventually was served with the motion papers.  See Letter from Orlando Rodriguez, Jan. 30, 2014 (ECF Doc. No. 18).  He then submitted a letter and exhibits to the Court setting forth reasons why he believes Defendants were responsible for his delayed receipt of the motion papers, and arguing that the case should continue forward, which the Court interprets as his opposition to the motion to dismiss.  Id.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[4] Exhibit 6 to Plaintiff's complaint contains a number of separate email communications.

To make this determination, a court conducts a three-part analysis.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 131 (quoting Iqbal, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id. (quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

**B. Leave to Amend**

Where a complaint is dismissed for failure to state a claim, leave to amend should normally be granted.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  However, the rule is not absolute; leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); see also Hill v. Rozum, 447 F. App'x 289, 290 (3d Cir. 2011) (indicating that "a district court should not dismiss a pro se complaint without allowing the plaintiff leave to amend unless amendment would be inequitable or futile").  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  Burlington Coat Factory Sec. Litig., 114 F.3d at 1434. (citations omitted).

III.    **DISCUSSION**

    **A.  Unjust Enrichment**

Plaintiff's unjust enrichment claim appears to assert that he should be compensated for time that he worked for Ready Pac in excess of forty hours per week.  He characterizes the hours expected of employees as "excessive and abusive" and indicates that "all supervisors were expected to work . . . 20 to 40 hours over the regular 40 hour[] week."  Compl. ¶ 36(c).

    In order to plead an unjust enrichment claim, a plaintiff must show that the defendant received a benefit and that retention of the benefit without payment would be unjust.  VGR Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).  Unjust enrichment can be a viable cause of action in the employment context where an employer fails to pay for time worked.  See Dickerson v. Palisades Med. Ctr., Civ. No. 13-3382, 2013 WL 5603927, at *4 (D.N.J. Oct. 9, 2013).

    The unjust enrichment doctrine requires that a plaintiff show that he expected remuneration from the defendant at the time he performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.  Associates Comm. Corp. v. Wallia, 211 N.J. Super. 231, 244 (App. Div. 1986).  Here, Plaintiff's employment relationship with Ready Pac was that he an at-will, salaried employee, and not an hourly employee.  Plaintiff would have no reasonable expectation to receive additional compensation for hours worked in excess of a particular amount per week, based upon the Offer of Employment attached by Plaintiff to his Complaint.  See Compl. Ex. 1.  Nor has he included any material in his Complaint suggesting that he had any other reason to expect compensation above his usual salary at the time when he worked more than forty hours per week.  Plaintiff thus cannot show that Ready Pac was enriched beyond its contractual rights.  Because nothing in the

Complaint suggests that Plaintiff had any reason to expect additional compensation for time spent at work beyond his usual hours, the Court finds that it would be futile to amend this claim, and therefore it will be dismissed with prejudice.

### B.  Money Owed Not Paid

Count III of the Complaint alleges that Ready Pac owes Plaintiff one day of his salary in connection with a day on which he did not work, and was not paid for.  Evidently, Plaintiff admits that he did not have vacation time available to cover the unspecified day at issue, but alleges that he had "3 days that were ow[ed] to him for working on his days off."  Compl. ¶ 46. It appears that Plaintiff asserts that these days off were owed to him because he worked on three separate days that were in addition to his regular work schedule, and that the former Plant Director, Shawn Bray, told Plaintiff that he could have three days off in addition to his regular vacation days as a result.  Id. ¶ 47.  It seems to be his contention that he subsequently took one day off from work in excess of his accumulated vacation days, intending to use one of the three days he believed had accumulated, but was not paid for it.

As "money owed not paid" is not a viable cause of action under state or federal law, Defendants have addressed this claim in their motion papers as if it were a breach of contract claim.  The Court will first address it as a breach of contract claim, and then discuss this claim to the extent that it should be construed as another unjust enrichment cause of action.

Under New Jersey law, at-will employees may contract with their employers regarding terms of their employment other than the duration of employment.  See Nolan v. Control Data Corp., 243 N.J. Super. 420 (App. Div. 1990).  However "for a contract to exist, the agreement must still meet the ordinary requirements for the formation of a contract."  Malloy v. Intercall, Inc., Civ. No. 08-1182, 2010 WL 5441658, at *7 (D.N.J. Dec. 28, 2010).

7

The Complaint does not allege facts to support the existence of a contract with respect to the one day of salary he believes he is owed, which are: offer, acceptance, and consideration. MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 735 (D.N.J. 2008). Plaintiff does not allege which day he was absent that he believes he should be paid for, or which "days off" he worked, earning the alleged additional paid time off.  Nor does he allege that he was offered additional vacation or personal leave time prior to working on his days off.  The allegation that Mr. Bray agreed to allow him an extra paid day off is insufficient to establish the existence of a contract.

It also appears to the Court that the claim asserted by Plaintiff in Count III may broadly fit the contours of an unjust enrichment claim.  It is possible that combined with the facts described in the previous section, Plaintiff is seeking to establish that during pay periods when he worked extra hours or days in addition to his regular schedule, Defendants sought to characterize him as a salaried employee who was not entitled to additional compensation, but during pay periods when he worked fewer hours or days than his regular schedule provided for, they deducted the missed time from his paycheck.

The Court does not now determine whether Plaintiff could plead a claim for unjust enrichment in connection with the one day of compensation he seeks to recover.  Such a determination is not necessary because Plaintiff has not properly alleged the elements of an unjust enrichment claim, which were described in the previous section, with respect to these facts.  Consequently, Defendants did not brief the law on unjust enrichment in connection with this count.  Because it is possible that this claim can be cured by properly pleading it as a breach of contract or unjust enrichment claim and alleging sufficient facts to satisfy all of the elements of the given cause of action, the Court will grant leave to amend with respect to this count.

### C.  Implied Covenant of Good Faith and Fair Dealing

In Count V, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing.  It appears that his principal allegation is that Defendants did so by requiring their salaried employees to work an excessive number of hours.  He alleges that "[w]orking 14-17 and up to 21 hours a day is not what Corporate America, or any sensible respectful business, ha[s] in mind when they thin[k] about Salaried people."  Compl. ¶ 62.  Defendant also includes allegations in this Count related to the alleged lack of training of employees about Title VII and the Equal Pay Act, which are each discussed later in this Opinion.

A covenant of good faith and fair dealing is implied in every contract in New Jersey, and requires that "neither party . . . do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420-21 (1997).  A contract must thus exist between the parties before a plaintiff can assert a claim for a breach of the implied covenant of good faith and fair dealing.  See Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 434 (App. Div. 1990).

Plaintiff does not allege that any such contract existed.  No general contract of employment existed, as Plaintiff admits in the Complaint that he was an at-will employee.  Compl. ¶ 23.  Neither does he allege that any other contract existed as to the terms or conditions of his employment.  Thus, the Complaint fails to state a claim under the implied covenant of good faith and fair dealing.  As the high court of one jurisdiction found, there is "no clearly established public policy which requires employers to refrain from demanding that their adult employees work long hours."  Upton v. JWP Businessland, 682 N.E. 2d 1357, 1358 (Mass. 1997).  Thus, the Court finds that it would be futile to recast the claims asserted in Count V as another cause of action, and Count V will be dismissed with prejudice.

### D.  Emotional Distress, Mental Anguish, and Public Humiliation

Counts VIII, IX, and X of the Complaint, respectively, assert claims for emotional distress, mental anguish, and public humiliation.  These may constitute damages which a plaintiff may recover for if he prevails in an employment discrimination case, but they are not independent causes of action.  See Voorhees v. Preferred Mut. Ins. Co., 246 N.J. Super. 564, 587 (App. Div. 1991) (to recover for "mental anguish and emotional distress," a plaintiff was required to establish each of the specific elements of a negligent infliction of emotional distress claim); Gumbs v. Pueblo Int'l, Inc., 823 F.2d 768, 773 (3d Cir. 1987) (mental anguish is a question of damages); Arturi v. Tiebie, 73 N.J. Super. 217, 222 (App. Div. 1962) (to recover for damages such as "wounded feeling and humiliation," a cause of action must be established first).

Further, to the extent that any of these counts should be interpreted as a claim for Intentional Infliction of Emotional Distress ("IIED"), Negligent Infliction of Emotional Distress ("NIED"), or defamation, Plaintiff also fails to state a claim.

In an IIED claim, "the plaintiff must establish intentional and outrageous conduct by defendant, proximate cause, and distress that is severe."  Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).  Further, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second) of Torts § 46, cmt. d).  In addition, "[t]he emotional distress must be sufficiently substantial to result in either physical illness or serious psychological sequelae." Turner v. Wong, 363 N.J. Super. 186, 200 (App. Div. 2003).

Here, to the extent that any of these counts should be construed as an IIED claim, Plaintiff has not alleged any conduct that is "beyond all possible bounds of decency."  Buckley,

111 N.J. at 366.  In fact, "conduct or decisions made in the employment context rarely rise to the level of outrageousness necessary to provide a basis for recovery for intentional infliction of emotional distress." Iwanicki v. Bay State Milling Co., Civ. No. 11-1792, 2011 WL 6131956, at *8 (D.N.J. Dec. 7, 2011) (citations omitted). "Quite a bit more . . . must accompany a firing" if it is to be deemed outrageous. Id.  Plaintiff also has not alleged any physical illness or serious psychological conditions resulting from Defendants' conduct.

Any potential NIED claim would fail because the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8, provides the exclusive remedy by which an employee may recover for injuries caused by workplace negligence. See Rivera v. Cracker Barrel Old Country Store, Inc., 02-4160, 2003 WL 21077965, at *5 (D.N.J. Mar. 3, 2003); Ditzel v. Univ. of Med. & Dentistry of New Jersey, 962 F.Supp. 595, 608 (D.N.J. 1997).

Finally, to the extent that the public humiliation claim should be construed as a defamation claim, Plaintiff has not stated a claim. See D.T.B. v. Dangler, Civ. No. 05-4309, 2006 WL 2938777, at *4 (D.N.J. Oct. 13, 2006) (indicating that a claim for "public humiliation" may be interpreted by a court as a claim for defamation).  A defamation claim requires that a plaintiff plead the alleged defamatory statements with particularity. See F.D.I.C. v. Bathgate, 27 F.3d 850, 875 (3d Cir. 1994).  Plaintiff pleads no such statements made by any of the defendants about him.  Instead, he pleads that because he was terminated, he was embarrassed by having to "communicate to several individuals that he was not employed anymore," who allegedly perceive Plaintiff as a "failure," "irresponsible" or a "loser" as a result.  Compl. ¶ 75.

Because the claims asserted in Counts XIII, IX, and X are damages remedies, Plaintiff would have to prevail on another count in his complaint that states a viable cause of action in order to recover damages for these alleged harms.  The Court will dismiss these counts with

prejudice as pleaded, as it would be futile to seek to cure them.  However, although the Court is skeptical that Plaintiff will be able to plead an IIED claim given the facts presently alleged, the Court will allow Plaintiff leave to amend his complaint to restyle Count VIII as an IIED claim if he wishes to do so.

### E.  Retaliation Based on Equal Pay Act

Plaintiff asserts that he was retaliated against in connection with the reporting of an alleged violation of the Equal Pay Act of 1963 ("EPA").  The EPA prohibits an employer from paying employees of one sex less than the rate which employees of the opposite sex are paid for equivalent work.  Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).  Plaintiff claims that he raised issues to management involving several employees whose formal job classification did not match up with the actual work that Ready Pac assigned them to perform.  Compl. ¶ 67.  He suggested to Mr. Rodriguera that the company might owe "back pay" to these employees.  Id. ¶ 70.  He specifically refers in his Complaint to a female Ready Pac employee, Farah Pascal, whose formal job classification resulted in her being paid less than she allegedly should have been for the type of work she performed.  Id. ¶ 69.  He alleges that he told Rodriguera and Crowley that Pascal and other employees could prevail in a claim for a violation of the EPA, and that Rodriguera and Crowley "got mad and dismissed Plaintiff's concerns."  Id. ¶ 70.  Plaintiff evidently infers that he was terminated as retaliation for raising these concerns, although he does not explicitly so allege.

Defendants argue that these claims should be dismissed because none of the alleged EPA violations pertain to Plaintiff himself, and therefore he has no standing to assert such a claim. Defendants are correct that Plaintiff could not bring a claim for an EPA violation on behalf of

Pascal or any other employee. <u>See</u> <u>West v. First Pennsylvania Bank, N.A.</u>, Civ. No. 89-4730, 1990 WL 106858, at *8 (E.D. Pa. July 25, 1990).

However, based upon the Court's reading of the complaint, Plaintiff is not attempting to assert an EPA violation on behalf of any other employee.  He is asserting a retaliation claim as a result of his own surfacing of alleged EPA violations in the workplace.  While Plaintiff does not explicitly characterize it as such, the Court construes this claim as an EPA retaliation claim under the Fair Labor and Standards Act ("FLSA").  The FLSA contains an anti-retaliation provision that makes it illegal to "discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ."  29 U.S.C. § 215.  This anti-retaliation provision is applicable to EPA retaliation claims. <u>See</u> <u>Marriott v. Audiovox Corp.</u>, Civ. No. 04-1307, 2006 WL 3805145, at *8-9 (W.D. Pa. Dec. 22, 2006).

Courts have held that an employee may bring an FLSA retaliation claim as a result of engaging in any protected activity.  To engage in protected activity, "the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA."  <u>McKenzie v. Renberg's, Inc.</u>, 94 F.3d 1478, 1486 (10th Cir. 1996). Thus, the FLSA "does not explicitly require that the employee's protected conduct relate to the assertion of his or her <u>own</u> statutory rights." <u>Id.</u> at 1486 n.8 (emphasis in original).  The Third Circuit has stated that "the key to interpreting the anti-retaliation provision is the need to prevent employees' fear of economic retaliation for voicing grievances about substandard conditions." <u>Brock v. Richardson</u>, 812 F.2d 121, 124 (3d Cir. 1987).  Courts have found that "an informal

complaint regarding inequality in pay is protected activity." Marriott, 2006 WL 3805145, at *9. Thus, standing is not the issue with respect to this count.

The elements of a retaliation claim under the FLSA require, at a minimum, a showing that: (1) the plaintiff engaged in a statutorily protected activity; (2) the employer took adverse action against the plaintiff; and (3) there is a causal connection between such activity and the employer's action. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Here, although Plaintiff has standing to assert an FLSA retaliation claim, he has not pleaded sufficient facts to demonstrate that he engaged in statutorily protected activity. To constitute protected activity, the communication made by an employee must implicate "a good faith, reasonable belief" that a violation of the law existed. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996). The only specific allegation pled in connection with this count is that a female employee was misclassified with respect to the actual tasks that she performed, and as a result earned less than if she had a higher job classification. This does not come close to satisfying the requirements for an EPA violation, which requires a showing that a member of the opposite gender worked at the same establishment, and received unequal wages for work that was equal in terms of skill, effort and responsibility, and performed under similar working conditions. Stanziale, 200 F.3d at 107.

While a retaliation claim does not require that a plaintiff be correct that a violation has taken place or that he know the letter of the law, it does require a showing of a reasonable belief of a future or past violation. Thus, in the context of the instant case, Plaintiff must show that he reasonably believed that Ready Pac had violated the EPA. Plaintiff appears to have a basic understanding of the requirements of the EPA, which is evident from his pleading that "[t]he law makes it illegal to pay different wages to men and women if they perform equal work in the same

14

workplace." Compl. ¶ 68.  However, he pleads no facts suggesting that Ready Pac generally treated female employees differently than male employees, or that any male employee performed the same work as Ms. Pascal under similar conditions, yet was classified in a higher job title or pay category.  At most, he pleads that one female employee was not paid according to Ready Pac's internal schedule of work duties.  Further, although he pleads that "several employees" were similarly miscategorized, he makes no allegations as to the gender of these employees.  In the exhibit to the Complaint that appears relevant to this charge, Plaintiff raised the issue in an email to Rodriguera and Crowley that Ready Pac owed Ms. Pascal "3-4 months of difference pay because we train[ed] her as a clerk and we never made the position official, nor pa[id] her for her performance."  Compl. Ex. 3.  The email does not make any suggestion that Ms. Pascal was miscategorized because of her gender, or that any similarly situated male employees were properly categorized.  Thus, Plaintiff falls short of showing that he had a reasonable belief that an EPA violation had taken place.

Plaintiff's EPA retaliation claim is also insufficiently pled for another reason.  Even if Plaintiff did have a reasonable belief that an EPA violation had taken place, he has not demonstrated that he engaged in protected activity.  The Complaint does not indicate that he "actively assist[ed]" another employee in asserting an EPA claim, or that he "otherwise engage[d] in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA."  McKenzie, 94 F.3d at 1486.  Plaintiff does not plead that he told Ms. Pascal or any other female employee that she should pursue an EPA claim against Ready Pac.  Rather, he appears to plead that he informed management that they could potentially be liable if certain employees chose to pursue such a claim, when he told management that the conduct he perceived as an EPA violation could have "serious impact in the Organization level

of liability [sic].  Compl. ¶ 70.  This appears similar to the conduct at issue in <u>McKenzie</u>, where

the Tenth Circuit found that an employee who informed the company that it was at risk of claims

that might be instituted by others as a result of alleged FLSA violations, did not engage in

protected activity, because protecting the company from liability was completely consistent with

her job duties as a personnel manager.  <u>McKenzie</u>, 94. F.3d at 1486-87.  Similarly, Plaintiff here

had a supervisory role at Ready Pac, and must show more than an attempt to protect his

employer from potential liability or internally correct alleged EPA violations in order to

demonstrate protected activity in connection with a retaliation claim.

Because it is possible that these deficiencies might be cured through an amended

pleading, the Court will grant Plaintiff leave to amend his Complaint as to this count.

### F.  Title VII Claim

Count VI of the Complaint asserts both a violation of Title VII, as well as a Title VII

retaliation claim.  The Complaint asserts that this count relates to discrimination on the basis of

race and national origin against Plaintiff and others.

Before a plaintiff can sue in federal court under Title VII, he must exhaust his

administrative remedies.  The Third Circuit has explained the process as follows:

> A plaintiff bringing an employment discrimination claim under Title VII must
> comply with the procedural requirements set forth in 42 U.S.C. § 2000e–5. Before
> filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a
> timely discrimination charge with the EEOC. The EEOC will then investigate the
> charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter
> before she can initiate a private action.

<u>Barzanty v. Verizon Pennsylvania, Inc.</u>, 361 F. App'x 411, 413 (3d Cir. 2001) (citations

omitted).  The requirement that administrative remedies be exhausted applies to both retaliation

and discrimination claims under Title VII.  <u>Johnson v. Shinseki</u>, 410 F. App'x 473 (3d Cir.

2011).  Plaintiff has neither alleged nor demonstrated that he has exhausted his administrative

remedies.  Thus, Count VI will be dismissed.  Plaintiff may seek to include a Title VII count in his amended complaint, if he chooses to file one, but must demonstrate that he timely exhausted his administrative remedies.

### G.  Conscientious Employee Protection Act (CEPA) Claim

Count IV of the Complaint, captioned "termination contract to public policy," invokes New Jersey's whistleblower statute, the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., which "was enacted to protect employees from retaliatory actions by employers."  Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 92 (3d Cir. 1999) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189 (1988)).  To set forth a prima facie case of retaliatory discharge under CEPA, a plaintiff must demonstrate four elements.  First, the employee must demonstrate a reasonable belief that his employer's conduct was in violation of a law, rule, regulation, or public policy.  Second, he must show that he performed a "whistle-blowing" activity as described in N.J.S.A. 34:19-3.  Third, an adverse employment action must have been taken against the employee, and fourth, there must be a causal connection between the whistle-blowing activity and the adverse employment action.  Klein v. Univ. of Med. & Dentistry of New Jersey, 377 N.J. Super. 28, 38 (App. Div. 2005).

The conduct that Plaintiff alleges he reported includes "practices that were, or seemed to be, illegal, immoral, fraudulent, or short of criminal."  Compl. ¶ 54.  However, the specifics that he alleges fall somewhat short of this generalized allegation.  He indicates that he reported what he views as abusive scheduling of employees to work excessive hours.  He also indicates that he protested that the company was not providing any training related to the Civil Rights Act of 1964, and refers to what he believed was a violation of the EPA.  He also raises issues about inequalities between workloads among the different shifts at the plant, and failure to properly

service or replace certain machinery. He further claims that he was vocal in his opposition to Ready Pac's apparent practice of hiring employees who "are on Parole, or in Mid Houses" and told his managers that he did not think the company should hire "criminals" or "convicts." Compl. ¶ 57.

None of this rises to the level of pleading a viable cause of action under CEPA. He has not identified any activity that he reasonably would have believed was in violation of a law, rule, or regulation. While he might have liked the company to train its employees about Title VII, this Court is aware of no law or rule that mandates any such workplace training. The EPA allegations were discussed previously in this Opinion, and for the reasons set forth there, he has not pleaded sufficient factual material to establish that he reasonably believed that any unlawful activity took place under the EPA. The closest thing to any discriminatory conduct that Plaintiff specifically alleges he reported was a supervisor's comment to a group of employees that "the company should fire all of you," with Plaintiff reported by email to his managers. Compl. Ex. 2. He evidently believes that the comment was racially motivated because the "all of you" was used by a white person to refer to a group of minority employees. The Court does not believe that a reasonable person would possibly think that it was a violation of federal civil rights law for a supervisor to tell a group of employees, that "the company should fire all of you," without anything further to suggest a racially motivated reason for the comment. A racially discriminatory context is especially lacking from the alleged comment because it was evidently made during a discussion about workplace productivity issues. Id.

Nor has Plaintiff identified a "clear mandate of public policy" that his former employer violated. While it may not be ideal for employees to work lengthy hours or to be provided with equipment that is in need of replacement, complaints about general working conditions are

"private disputes" that are not covered by CEPA.  See Greaves v. Gap, Inc., Civ. No. 11-6283, 2013 WL 257127, at *4 (D.N.J. Jan. 23, 2013) (finding that complaints about inadequate break time did not implicate a clear mandate of public policy).  Rather, "the complained of activity must have public ramifications, and . . . the dispute between employer and employee must be more than a private disagreement."  Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 445 (2004).

The court will grant Plaintiff leave to amend this count.  If Plaintiff can plead sufficient factual material to state a claim for retaliation under the EPA, he may also be able to state a CEPA claim.

### H.  Wrongful Termination

Plaintiff has waived his right to make a wrongful termination claim under New Jersey common law by filing a claim under CEPA.  When a plaintiff files an action under CEPA, other state law retaliation claims are waived.  The relevant statute provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19-8.  While causes of action that are independent from CEPA claims are not waived, "causes of action that are directly related to the employee's termination due to disclosure of the employer's wrongdoing" fall within CEPA's waiver provision.  Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 465 (D.N.J. 2009) (quoting Falco v. Community Med. Ctr., 296 N.J. Super. 298, 318 (App. Div. 1997)).

New Jersey Courts have commonly held that when a Plaintiff files a CEPA claim, he waives his right to recover under a common law wrongful termination claim. See Young v. Schering Corp., 141 N.J. 16, 28-29, 660 A.2d 1153, 1159-60 (1995) (finding that "a former employee forfeits his or her common-law retaliatory-discharge cause of action when he or she 'institutes' a CEPA cause of action); Robles v. U.S. Envtl. Universal Servs.,Inc., 469 F. App'x 104, 108 (3d Cir. 2012) (holding that two of the plaintiffs "waived their wrongful termination claims by filing CEPA claims").  Therefore, this count will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be **GRANTED**.  As explained in this Opinion, Plaintiff may move for leave to file an Amended Complaint as to Counts III, IV, VI, VII, and VIII within thirty (30) days.  Should Plaintiff file such a motion, he must attach to his motion a copy of his proposed amended complaint.  An appropriate order shall enter.

Dated:  5/9/2014                                          /s/ Robert B. Kugler
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge